# CLARK v. HEFLEY et al.—238 S. W. (2d) 513.

Western Section. November 8, 1950.

Petition for Certiorari denied by Supreme Court, March 9, 1951.

John C. Bondurant, of Hickman, Ky., and Sam C. Nailling, of Union City, for complainant.

David G. Caldwell, of Union City, for defendant.

BAPTIST, J. The question here arises upon an item in the last will and testament of L. T. Holliday, deceased, who died in Obion County, Tennessee, on November 15, 1946, said will being probated in the County Court of said County.

The item referred to is as follows: "I give and bequeath to Mrs. Lottie C. Clark the sum of Four Thousand Five Hundred ($4,500.00) Dollars, upon the condition that she be a widow at the time of my death and provided further that should she not be a widow at the time of my death, she is not to receive anything at that time, but if she become a widow before my estate is wound up, she is then to receive the Four Thousand Five Hundred ($4,500.) Dollars. If she does not become a widow before my estate is wound up, then this Forty-five Hundred Dollars shall revert to my estate."

The complainant, Mrs. Clark, who was a niece of Mrs. L. T. Holliday, deceased, wife of the testator, alleges that her said aunt entered a contract with her said husband, the testator, wherein it was agreed that the survivor would leave $5,000.00 to Mr. Holliday's nephew, Charles Brooks Holliday, and $5,000.00 to Mrs. Holliday's niece, Mrs. Lottie C. Clark.

That in this agreement no mention was made of Mrs. Lottie C. Clark being a widow; that no conditions were placed on this agreement between the parties.

That as a consequence, and in consideration of the agreement, Mrs. Holliday conveyed to her said husband all of her property, including stocks and bonds.

That L. T. Holliday breached said contract by putting in the will the condition that she must be a widow before she could receive the legacy.

That she is married and living with her husband Charles Clark, and was married to and living with her said husband at the time the contract was entered into between her said aunt and her said husband; that he is a good husband; that the condition that she be a widow before she inherit the legacy of L. T. Holliday is a condition she has no control over; that it is an impossibility of legal performance by her, and is a condition that is void against public policy.

The defendants filed answer and cross-bill. They aver that the complainant's cause of action accrued as a claim against the estate of the testator and that it is barred under Code Sec. 8225, providing that claims against an estate, unless filed within eighteen months from the qualification of the executors, shall be barred.

They deny that the condition placed upon the bequest is void as being contrary to public policy.

They deny the making of the contract between L. T. Holliday and his wife.

They aver that the filing of the bill in this case constitutes a contest of the will, and by cross-bill pray that the Court declare it to be a contest within the meaning of Section 17 of the will, and the defendant's rights under the will be declared forfeited.

The defendant, Mrs. Clark, filed a demurrer to the cross-bill which was sustained.

The case was presented to a jury upon the following issues, and with the answers as given:

"1. 'Did Mr. L. T. Holliday agree and contract with his wife, Mrs. Holliday to, on his death, if she preceded him, leave to Mrs. Lottie C. Clark the sum of $5,000,00?'

"To which question the Jury answered, 'Yes'.

"2. 'If your answer to question (1) is 'Yes', then,

"(a) 'Was there a valuable consideration for such an agreement and contract, to which question the Jury answered, "Old and Third Bank Stock and Bank Account".'

"(b) 'If you say there was a consideration, what was it?'

"The jury answered '$5,000.00'."

Judgment was pronounced upon the jury's verdict and a decree entered in favor of Mrs. Clark in the amount of $4,500.00, the testator having previously advanced her $500.00.

The complainants' motion for a new trial having been overruled, they have appealed to this Court in the nature of a writ of error and assigned errors.

The testator and his wife, Mrs. L. T. Holliday were married and lived together for many years. Evidently, they were frugal and industrious people and accumulated

the large estate disposed of in his will. They were childless.

The complainant, Mrs. Clark, was the niece of Mrs. Holliday and her only close relative. Brooks Holliday was the only close relative of Mr. Holliday.

It is fully proven by a number of witnesses that L. T. Holliday and his wife entered into an agreement whereby the survivor was to leave $5,000.00 to Brooks Holliday and $5,000.00 to Lottie Clark, one of the conditions being that Mrs. Holliday would transfer her property to her husband.

In the year of her death, Mrs. Holliday transferred to her husband her bank account in the amount of $4,382.40, and ten shares of stock in the Old & Third National Bank of Union City of the value of $400.00 per share, or in the aggregate $4,000.00.

It is shown by the testimony of Mr. Robert D. Fry, attorney of the Union City Bar, that L. T. Holliday wrote several wills, in each of which he bequeathed to Mrs. Clark $5,000.00 without any conditions. It should be said that Mr. Fry's testimony is not based on communications between attorney and client, but from open discussions between the testator and Mr. Fry's father, Mr. Fry having no connection with his father in the practice of law.

The witness, Mitt Shaw, testifies that he often heard in their home the testator and his wife speak of the agreement that they would leave $5,000.00 to his nephew and $5,000.00 to her niece, Mrs. Clark; that on one occasion the testator said to his wife: "If you will deliver the bank stock to me, I will agree to certainly carry out our agreement and give Miss Lottie $5,000.00," and that she agreed to this transfer and agreed to the $5,000.00 going to Charles Brooks Holliday.

The witness, Nannie Sanders, testifies that she heard the testator say time and again that it was thoroughly understood between him and his wife that Lottie Clark would get her part, that she was to have hers and his nephew was to have his; that Mrs. Holliday said she wanted Lottie to have her part and he agreed to it.

Mrs. Nannie Roberts testifies that she heard both the testator and his wife say that Miss Lottie was to come in equal with Brooks; that as much as they gave Brooks she was to have too; that she heard the testator promise his wife that if she went first, he would see to it that Lottie got her part, as much as Brooks got.

Mrs. Lester Caldwell testifies that both the testator and his wife were talking before the witness and that it was understood that each one was to allow their niece and nephew to share and share alike; that she had once read one of the wills of the testator in which the complainant was to receive the sum of $5,000.00.

For some years before the death of Mrs. Holliday, the relations between Mrs. Clark and her husband were friendly and cordial with the testator.

Mrs. Clark testifies that for years before Mrs. Holliday's death, she was in the home at times for several days or for a week or two weeks at intervals and helped with the housework and duties; that her husband helped by driving the testator to his farm or looking about things and reporting to him, doing repair work about the house, the steps, the roof, yard mowing, etc.

Whether justified or not, the testator conceived a dislike for the complainant's husband, expressing it to different people on different occasions.

The witness, Mrs. Joe Gray, testifies that after Mrs. Holliday's death, the testator stated to her that he had promised Mrs. Holliday that he would give Lottie her

part, "But I am not going to do it, . . . I don't like Charley Clark and I don't aim for them to get any part of my money".

The defendant contends that the Court was in error in overruling the motion for a new trial on the ground that there is no evidence to support the verdict.

■ On the issue submitted as to whether L. T. Holliday contracted with his wife to leave Mrs. Clark the sum of $5,000.00, and as to whether there was a consideration for such contract, there was material evidence, as above set out, to support the jury's verdict on both of said issues and the assignment of error is overruled.

The defendants contend that the claim of complainant under the item of the will under consideration is barred by Code Section 8225, providing that the creditors of deceased persons shall, within eighteen months from the qualification of the executor, file with the latter their accounts, demands and claims.

The defendant cites several cases to the effect that all persons who have demands originating from contracts or agreements with the deceased are considered to be creditors of the estate.

■ We do not think the Code Section referred to, or the cases cited, has any application to the case at bar.

Code Sec. 8347 provides: "Any distributee or legatee of the estate may, after the expiration of eighteen months from the grant of letters, apply to the county, probate, or chancery court of the county in which administration was taken out, to compel the payment of his distributive share or legacy."

In Kincaid v. Rogers, 29 Tenn. 83, it is said that the Chancery Court will entertain a bill on behalf of legatees, after the limitation imposed on creditors for filing claims, and the bill may be filed against the representative or

third persons who may have been concerned in detaining or illegally wresting their specific shares from them.

This bill was properly filed by the complainant to compel the payment by the executors of the legacy according to the agreement between the testator and his wife, and upon the ground that the testator perpetrated a fraud upon his wife, who transferred her property to him in consideration of his agreement to provide in his will $5,000.00 for the complainant.

The defendants contend that the complainant is guilty of laches. We do not think the insistence is tenable. The estate of L. T. Holliday has not been settled, therefore, the defendants have not been prejudiced by any delay on the part of the complainant.

The defendants contend that the complainant by her suit forfeited all rights she had under the will by reason of item 17, which provides in substance that if any beneficiary should contest the will such one should not receive anything from the testator's estate.

The argument is that this case is a contest of the testator's will.

We do not agree with this contention. A contest of a will is an attempt by legal proceeding to show that the testator was incapable of making a will or that the instrument is the will of another by reason of undue influence, to the end that the will may be declared void and the estate be administered according to the laws of descent and distribution. There is no contention here that the testator was incapable of making the will.

Furthermore, the proceedings for contesting a will are set out in Code Sec. 8103, providing that where the validity of a will is contested, this fact shall be certified to in the Circuit Court.

In the Circuit Court the cause is tried upon the issue of *devisavit vel non*.

■ The jurisdiction of the Circuit Court is exclusive in the matter of the contest of wills, and Chancery Courts will not entertain and try an issue of *devisavit vel non* although it is presented in connection with matters of equitable cognizance. Simmons v. Leonard, 89 Tenn. 622, 15 S. W. 444.

The case at bar is a suit to enforce the agreement which the testator made with his wife, based on a valuable consideration, to leave $5,000.00 to the complainant.

■ It is clear, we think, that such contract is enforceable by the complainant.

In Pritchard, Sec. 24, it said: "There can be no doubt that a person may make a valid agreement legally binding upon himself to make a particular disposition of his property by last will and testament. The law permits a man to dispose of his own property at his pleasure, and no good reason can be assigned why he may not make a legal agreement to dispose of his property to a particular individual or for a particular purpose as well by will as by a conveyance to be made at some specified future time or upon the happening of some future event. It may be unwise for a man in this way to embarrass himself as to the final disposition of his property, but he is, by law, the disposer of his own fortune, and the best judge of the time and manner of disposing of it. If, in pursuance of such agreement, he makes the will, it is irrevocable, and if he fails to execute the will according to the agreement, it is a fraudulent violation of his contract and equity will give the beneficiary relief. During the lifetime of the testator, he may be prohibited by injunction from disposing of the property he has agreed to devise or bequeath, in violation of his agreement; and,

after his death, a court of equity will declare a trust upon his estate and indemnify the beneficiary to the extent he has suffered by the violation of the agreement, out of any property which should have become his under the promised will."

As to the right of the complainant to institute the proceedings to enforce the contract, we quote from 57 Am. Jur., p. 490, Sec. 721: "Enforcement By Or For Benefit Of Third Person.—In equity, at least, a person who is a beneficiary under a contract between two other persons to make wills with mutual and reciprocal provisions can maintain a suit to enforce the contract. Equity will protect the right of the third-party beneficiary of wills with mutual and reciprocal provisions, executed in accord with a contract between the testators, as against revocation of the will of the survivor after he has probated and has accepted the benefits of the will of the deceased testator which accorded with the agreement, in a suit maintained by or on behalf of such third party beneficiary for specific performance or the declaration of a trust. Equity will also act to protect the right of a person, under a contract between two other persons to make mutual and reciprocal wills, against a conveyance or transfer of property attempted to be effected by one of the parties during his lifetime in violation of the contract."

"A valid and enforceable agreement by one party to devise or bequeath property to another party calls for performance according to its terms". 68 C. J. p. 577, Sec. 192. Citing Crofut v. Layton, 68 Conn. 91, 35 A. 783, as follows: "Where an absolute and unconditional promise to bequeath certain property is made, a will leaving the property in question to the promisee conditionally on certain conduct on his part which formed

no part of consideration is a breach of and not a compliance with the agreement.''

The defendants assign error on the action af the Chancellor in failing to submit to the jury sixteen issues tendered by the defendants.

■ Without setting out these submitted questions, we think it is sufficient to say that these questions are immaterial, or are upon undisputed questions of fact.

As we have heretofore stated, the only questions material to the suit are whether the testator agreed to leave the complainant $5,000.00 and whether there was a consideration for the agreement.

The defendants contend that the complainant is barred in this suit by reason of the Statute of Frauds, Code Sec. 7831.

The insistence is that the contract between the testator and his wife is not in writing, and ''because it appears from the inherent nature of the contract, and from the words and actions of the parties, that it was understood between Mr. and Mrs. Holliday that this contract was not to be performed within the year''.

■ We do not agree with this contention. The particular Section of the Act relied on is that no action shall be brought ''Upon any agreement or contract which is not to be performed within the space of one year from the making thereof''.

As said in Deaton v. Tennessee Coal & R. R. Co., 59 Tenn. 650: ''It is the settled construction of this provision of the Statute, that if the executory promise be capable of entire performance within one year, it is not within this clause'', and ''if when made it was in reality capable of a full and bona fide performance within the year, without the intervention of extraordinary

circumstances, then it is to be considered as not within the Statute''.

In 49 Am. Jur. Sec. 215, under Statute of Frauds, p. 540, it is said: ''The provision of the Statute relating to contracts not to be performed within a year does not affect agreements to leave property by will, for such an agreement may be performed within the year.''

At page 388, Sec. 27, it is said: ''If the contract, according to the intention of the parties, as shown by the terms of the contract, may be fully performed within a year from the time it was made, it is not within the Statute, even though the time of its performance is uncertain, and may probably extend, and can be expected by the parties to extend, and in fact extend, beyond the year.''

In the instant case the contract or agreement between the testator and his wife was capable of being performed within the year, and the statute has no application.

For another reason we do not think the statute can be invoked in this case.

The testator agreed with his wife to leave the complainant $5,000.00, in consideration of which she transferred to him her bank account and stocks. Thereafter the testator perpetrated a fraud in imposing on the legacy a condition which is intended to prevent the complainant from receiving the legacy. A court of equity will not aid in such fraud by reason of the statute.

Our attention is called to 69 A. L. R. pp. 22, in annotations under the head, Agreement to leave property to another'' and in which it is said: ''Courts of equity will not permit the Statute of Frauds, the only purpose of which is to prevent fraud to be invoked if the effect will be to accomplish a fraud.''

The defendant contends that the Chancellor was in error in submitting to the jury the issues which have heretofore been set out. The argument is that the questions are too technical; that the jury could not understand the meaning of the word contract or consideration; that the questions were so framed as to make an answer of yes easy, and that the questions were not framed in the light of complainant's pleadings.

We do not agree with this contention. The issues were correctly framed in accordance with the contentions of the parties on the only material issues in the lawsuit.

They are in plain and simple terms and capable of being understood by any person of average intelligence.

There are other assignments of error, but they are either immaterial or cumulative on the questions already discussed and determined in this opinion.

There is no error in the record and the ends of justice have been met in the result.

All assignments of error are overruled and the decree of the Chancellor is affirmed at the cost of the defendants.

A decree will be entered here in favor of the complainant, Mrs. Lottie C. Clark, against J. V. Hefley and H. H. Royster, executors of the estate of L. T. Holliday, in the amount of $4,500.00, with interest from the date of the decree in the Chancery Court.

Anderson, P. J., and Swepston, J., concur.